UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Bryan Shawn Blevins, | ) | C/A No. 4:11-03267-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Horry County; | ) | |
| Deborah Hipp; | ) | |
| Southern Health Partners; | ) | |
| Tom Fox, | ) | |
| | ) | |
| Defendants. | ) | |

## I. PROCEDURAL BACKGROUND

The Plaintiff, Bryan Blevins, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1]

on December 1, 2011. At all times relevant to the allegations in the complaint, Plaintiff was a

pretrial detainee housed at the J. Rubin Long Detention Center ("JRLDC").[2] Defendant Southern

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72.

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Health Partners filed a motion for summary judgment on May 7, 2012. (Doc. #37). Because Plaintiff is proceeding *pro se*, he was advised on or about May 14, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a response in opposition on June 7, 2012. (Doc.#46).

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e);

Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ANALYSIS

Plaintiff alleges that Defendant violated his Constitutional rights by failing to give him appropriate treatment when he complained about chest pain. Specifically, Plaintiff asserts that he suffers from heart disease alleging he has been diagnosed with cardiomyopothy after having episodes of chest pain. Plaintiff asserts that he was told to follow up with a cardiologist but was denied by the medical staff at JRLDC. Plaintiff alleges that he suffered with extreme chest pain for

which he was rushed to the Conway Medical Center Emergency Room on several occasions and that he was not allowed to see his cardiologist as recommended by the ER doctor.

As to this Defendant, Plaintiff alleges in his complaint as follows, quoted verbatim:

> On 10-2-11, Southern Health Partners had taken over as the medical director and medical staff of J. Reuben Long Detention Center. On a few occasions since, I have experienced severe chest pains that was ignored by the new medical staff. The new Southern Health Partners nurses stated to a correctional officer that I "would have to be almost dead before they would come see me. They did check my blood pressure and it was extremely low, and chose to do nothing to help me. Therefore allowing me to cruelly and needlessly suffer because of my incarceration. I have complained and written grievances.
> . . .
> On 10-5-11 I went to the Nurses (Southern Health partners) and complained that I was having chest pains, they checked my blood pressure which was low and instead of sending me to the hospital to get throughly(sic) checked out I was sent to sergation (sic) for 5 days.

(Complaint).

Defendant argues that it assumed the medical care of the inmates at the JRLDC on October 2, 2011. Defendant argues that "Plaintiff mentions 'on a few occasions' without giving dates, since SHP took over, the Plaintiff has experienced severe chest pains that were ignored by SHP. The nurse supervisor cites places in the medical record where in fact Plaintiff's complaints were addressed by the nursing staff." (Lowery's affidavit, Doc. # 37-2). Defendant clarifies that even though Plaintiff alleges he was sent to segregation for five days, Plaintiff did not cite the reason that he was segregated was for the convenience of cardiac monitoring.[3] Id.

In his response to Defendant's motion for summary judgment, Plaintiff, referring to his Exhibit "A," asserts that Defendant was aware that he was ordered to see a cardiologist by the Conway Medical ER and that Defendant did "knowingly create a situation of medical indifference

---

[3] Plaintiff did not deny this assertion in his response in opposition.

by not providing him with the a continum [sic] of care without regard to his lack of medical coverage." Plaintiff continues that "...the defense admits they are aware of plaintiff's need to and orders to see a cardiologist but they refuse to send him to see said cardiologist due to lack of medical insurance which is in breach of the supreme court findings in Estell v. Gamble." (Response, doc. #46, p. 2). However, Plaintiff further asserts that he was seen by a cardiologist on May 21, 2012, after a hospital visit on April 4, 2012, and that he is now being billed for said visit since the Defendant refuses to pay the medical bill.

Plaintiff's exhibit "A" which he attached to his response is a copy of a grievance he filed on January 24, 2012, stating that he had been moved from a medical pod to a non-medical pod, medical had stopped his snack bags due to his lack of insulin coverage which they had failed to supply. The response to the grievance was as follows: "Inmate remains on diabetic diet, his FSBS is checked weekly on Saturday. Inmate to follow up with cardiologist upon release from facility. Cardiologist will not see inmate due to no insurance & outstanding balance." (Plaintiff's Exhibit A, Doc. #46-1).

Defendant argues that it assumed the contract with the Horry County Detention Center on October 2, 2011. Defendant asserts that with one or two exceptions, the allegations of failure to provide medical care were during the time when a different contracting party was in charge of the medical division of the JRLDC. Defendant argues that its motion for summary judgment should be granted in that the evidence shows that Plaintiff complained during the time it was in charge of the medical unit on three occasions, and Plaintiff received evaluation and/or treatment on these three occasions. Therefore, Defendant argues that Plaintiff has failed to show that if he had a serious medical need, the Defendant was deliberately indifferent to such need and was treated appropriately within the standard of care based on the medical records.

Defendant submitted the affidavit of Dr. Charles Bush who attests that he is a licensed medical doctor having practiced for more than thirty years. (Bush affidavit, doc. # 37-1). Bush asserts that he has a contract with Southern Health Partners to provide medical care for inmates at the Horry County Detention Center, and he is familiar with the medical records of Plaintiff. (Id.). Plaintiff was seen by Dr. Bush on February 22, 2012, after complaining of chest pain. (Id.). All of Plaintiff's vital signs were taken and were all within normal limits, nonetheless, an EKG was ordered which was normal. A physical exam was performed showing no evidence of a heart attack. (Id.). Plaintiff received all appropriate medications and the nursing staff has never been deliberately indifferent to any emergent or serious illness or complaints of the Plaintiff since October 2, 2011. (Id.).

Defendant also submitted the affidavit of Patricia Sue Lowery who attests that she is the Team Leader Administrator and a Registered Nurse Supervisor at the Horry County Detention Center, and assumed her position in October 2010. (Id.). Among her duties as Registered Nurse Supervisor at the JRLDC, she is responsible for the records of the inmates who seek healthcare while incarcerated. (Id.). Lowery is familiar with Plaintiff's medical records and has had professional contact with the Plaintiff. (Id.). Southern Health Partners did not begin their tenure with the JRLDC until October 2, 2011, and prior to that date, a different agency provided healthcare and medical treatment for the inmates. (Id.). Lowery attests that the record reflects that on October 16, 2011, Plaintiff requested a blood pressure check which was done with normal results. (Id.). Lowery asserts that the first complaint of chest pain given to her administration was October 30, 2011, when Plaintiff complained of pain radiating down his left leg and requested medication for arthritis. (Id.). The next day, Plaintiff was seen by one of the nurses who took his vitals finding them to be normal

6

including blood pressure, respirations, pulse and temperature. (Id.). Lowery attests that it is true that Plaintiff was segregated as claimed but not for the reasons he alleged, but for cardiac monitoring. Additionally, Plaintiff received medication for his heart, diabetes, and was given meals according to the diabetic and heart diet with his sugar checked weekly. (Id.). The first complaint by Plaintiff of chest pain other than for arthritis was on February 21, 2012. (Id.). He was seen by the JRLDC physician the next day and an EKG ordered with normal results. (Id.).

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the

7

> victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts

prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

The Plaintiff has failed to show that he was denied medical treatment when he complained of chest pain during the time defendant was in charge of the medical unit at JRLDC, i.e., after October 2, 2011. Plaintiff admits in his complaint that he went to the nurses for Southern Health Partners on October 5, 2011, complaining of chest pains, and "they checked my blood pressure." (Complaint, p. 4). Plaintiff was seen again on November 1, 2011, complaining of pain, was examined, and referred to the doctor. (See Exhibit attached to Lowery affidavit). As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. In the complaint, Plaintiff does not cite to any other specific date that this Defendant allegedly denied him care other than October 5, 2011, when he admits they evaluated him checking his blood pressure but complains that they did not send him to the hospital after finding his blood pressure low. Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, Plaintiff has failed to show that he had a serious medical need of which Defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by the Defendant "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be

9

provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff. For the above stated reasons, summary judgment should be granted in favor of Defendant on this issue.[4]

### III. CONCLUSION

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendant Southern Health Partners (document #37) for summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

                                                             Respectfully submitted,

                                                             s/Thomas E. Rogers, III
                                                             Thomas E. Rogers, III
                                                             United States Magistrate Judge

October 19, 2012
Florence, South Carolina

      The parties' attention is directed to the important notice on the next page.

---

[4] If Plaintiff is attempting to hold Defendant liable for the actions of its employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).