UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Bryan Shawn Blevins, | ) | C/A No. 4:11-03267-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Horry County; | ) | |
| Deborah Hipp; | ) | |
| Southern Health Partners; | ) | |
| Tom Fox, | ) | |
| | ) | |
| Defendants. | ) | |

## I. PROCEDURAL BACKGROUND

The Plaintiff, Bryan Blevins, proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on December 1, 2011. At all times relevant to the allegations in the complaint, Plaintiff was a pretrial detainee housed at the J. Rubin Long Detention Center ("JRLDC").[2] Defendants Horry

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72.
  A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

County, Deborah Hipp and Tom Fox, hereinafter "Defendants," filed a motion for summary judgment on June 11, 2012. (Doc. #48). Because Plaintiff is proceeding *pro se*, he was advised on or about June 11, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a response in opposition on June 29, 2012. (Doc.#57).

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e);

2

Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## B. ARGUMENT OF PARTIES/ANALYSIS

Plaintiff alleges that Defendants violated his Constitutional rights by failing to give him appropriate treatment when he complained about chest pain. Specifically, Plaintiff asserts that he suffers from heart disease alleging he has been diagnosed with cardiomyopothy after having episodes of chest pain. Plaintiff asserts that he was told to follow up with a cardiologist but was denied by the medical staff at JRLDC. In his complaint, Plaintiff alleges as follows, quoted

3

verbatim:

> On 7-06-11 I was taken to Conway Medical Center because of chest pain. The ER Doctor said that I had been diagnosed with cardiomyopothy and was told to follow up with a cardiologist. This follow up was denied by the J. Reuben Long Medical Staff under direction of Mrs. Deborah Hipp.
>
> On 8-28-11, I was once again rushed to Conway Medical Center ER for extreme chest pain. Once again I was told to see a cardiologist, and once more I was denied transport to the cardiologist, and 3 days later on 8-31-11, I was yet again rushed to Conway Hospital ER due to the effects of my having cardiomyopathy and once again I was told to go see a cardiologist, yet again, I was denied the right to see a cardiologist. These same incident happened on 2 other dates (9-10-11/9-20-11) with the exact same results.
>
> On 10-2-11, Southern Health Partners had taken over as the medical director and medical staff of J. Reuben Long Detention Center. On a few occasions since, I have experienced severe chest pains that was ignored by the new medical staff. The new Southern Health Partners nurses stated to a correctional officer that I "would have to be almost dead before they would come see me." There did check my blood pressure and it was extremely low, and chose to do nothing to help me. Therefore allowing me to cruelly and needlessly suffer because of my incarceration. I have complained and written grievances.
>
> I was told by the correctional officers that Tom Fox wished for them to tell inmates that they "Could do nothing about medical."
>
> On 10-5-11 I went to the Nurses (Southern Health partners) and complained that I was having chest pains, they checked my blood pressure which was low and instead of sending me to the hospital to get throughly(sic) checked out I was sent to sergation (sic) for 5 days.

(Complaint).

Plaintiff seeks actual and punitive damages, proper medical treatment, review of the medical department by state boards for disciplinary action or criminal charges, an audit of the facility by independent experts, and a report to the court of any irregularities. (Complaint).

Defendants argue that they have not violated Plaintiff's constitutional rights and this action should be dismissed. Defendants attached an affidavit from Major Joey Johnson who attests that he

4

is the Director of the JRLDC and that the medical records submitted with the Defendants' motion for summary judgment are true and accurate copies of the Plaintiff's medical records kept in the normal course of business at the JRLDC. (Doc. # 48-2).

Based on the medical record and evidence presented, prior to Plaintiff's incarceration, he had a heart catherization at Grand Strand Regional Medical Center on September 24, 2009, and the physician recommended medical management. (Doc. # 48-3, p. 14). Based on the Hospital records, Plaintiff was seen at Conway Medical Center on April 26, 2011, for chest pains and gave a history of cardiomyopathy. Plaintiff was evaluated, had tests performed, and was treated. (Doc. # 48-8, p. 1-2). Plaintiff was seen and admitted by Conway Medical Center on August 27, 2011, with negative test results. He was discharged back to the jail and told to follow up with his cardiologist in a week. (Doc. # 48-8, p. 3). Plaintiff was seen again at the Conway Medical Center on September 10, 2011, with complaints of chest pain. Plaintiff was discharged the same day with a disposition of chest pain (non-specific) and stable condition. He was told to follow up with his cardiologist. (Doc. # 48-8, p. 6). The nurses at JRLDC noted that the hospital recommended a cardiology follow up in one week from his visit to the hospital of September 10, 2011. On September 12, 2011, the nurses at JRLDC attempted to schedule the cardiology appointment but were told the cardiologist who last saw Plaintiff in 2009 would not see him again and instructed that he follow up with his family physician. (Doc. #48-5, p. 3). Plaintiff was again sent to Conway Medical Center on September 20, 2011, with complaints of chest pressure. He was examined, tests were performed, and the discharge diagnosis was "anxiety, chest wall pain, gastritis, pneumonia, pneumothorax, unstable angina, MALINGERING, DRUG SEEKING BEHAVIOR." (Doc. # 48-8, p. 8). He was told to follow up at the detention center.

The medical records from the JRLDC reveal Plaintiff complained of chest pains on June 17, 2011, and was taken to medical and examined. As all vital signs were normal, he returned to his cell and signed up for a doctor's appointment. Plaintiff saw the medical staff on July 4, 2011, complaining of radiation down his left and right arms for three to four days but denied chest pain. Plaintiff asked to be seen at Grand Strand Regional Medical Center rather than Conway Medical Center and refused an EKG stating "he had one done a couple of weeks ago." (Doc. #48-6, p. 1). Plaintiff was placed on the sick call list and monitored for changes. On July 6, 2011, Defendant Deborah Hipp noticed changes in his EKG and sent him to Conway Medical Center by EMS for treatment . (Doc. #48-4, p. 4). On August 27, 2011, Plaintiff was seen in medical complaining of chest pain and an EKG revealed potential abnormalities. Therefore, EMS was called and Plaintiff was transported to Conway Medical Center. All of the cardiac exams performed in the emergency room were negative.

Plaintiff was transported again to Conway Medical Center on August 31, 2011, complaining of tightness in his chest. (Doc. #48-4, p. 6). Plaintiff was sent to the hospital on September 10, 2011, September 19, 2011, and September 20, 2011. Plaintiff was seen and examined in medical at JRLDC on September 25, 2011, and September 26, 2011, complaining of chest pressure. (Doc. #48-5, p. 4). Plaintiff was seen in medical on September 28, 2011, was examined and had no nausea, dizziness, or shortness of breath. Plaintiff was instructed to lye down and relax for the night, and they would continue to monitor him. (Doc. # 48-6, p. 2). On September 30, 2011, Plaintiff was seen in medical and had an EKG performed which showed no abnormal findings from last the EKG. Plaintiff was told medical would continue to monitor him and to let them know if he became worse. (Doc. #48-6, p. 3).

Plaintiff was seen by Southern Health Partners on October 4, 2011, for chest pain but denied current chest pain. (Doc. #48-7, p. 1). Plaintiff was seen by Southern Health Partners on October 6, 201, complaining of chest pain and was placed on medical observation and checked every 15 minutes. (Doc. # 48-7, pgs. 2-3). Plaintiff was seen again on November 1, 2011, complaining of pain, was examined, and referred to the doctor.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions

> sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of

negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

The Plaintiff has failed to show that he was denied medical treatment when he complained of chest pain. Based on the evidence before the court, Plaintiff was sent to the hospital on at least six occasions. Plaintiff was evaluated, received blood pressure checks, had an EKG, and was examined. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, Plaintiff has failed to show that he had a serious medical need of which Defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by the Defendant "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Moreover, any allegations of medical indifference as to Defendant Fox should be dismissed as he is not medical personnel and Plaintiff has not shown that he interfered with Plaintiff's medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff.[3] For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.[4]

---

[3] If Plaintiff is attempting to hold any of the Defendants liable for the actions of his employees, the claim fails. Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).

[4] As to Defendant Horry County, the claim fails. In order to maintain a 42 U.S.C. § 1983 municipal liability claim, a plaintiff must affirmatively establish that the alleged constitutional violation was directly caused by an official practice, policy, or custom of the municipality. Monell, supra. Based upon a review of the evidence of record, the undersigned concludes the evidence of record fails to create a genuine issue of material fact as to whether the plaintiff's alleged constitutional violations were "directly caused by an official practice, policy or custom of the municipality." The Supreme Court held that municipalities cannot be held vicariously liable under §1983 for the acts of their employees. Monell, supra. Therefore, it is recommended that any claims against Horry County be dismissed.

## C. ELEVENTH AMENDMENT IMMUNITY

The Defendants contend that the Plaintiff's §1983 claims them for money damages in their official capacity are barred pursuant to Eleventh Amendment Immunity. Defendants also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as an employee of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the

11

Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were/are employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## QUALIFIED IMMUNITY

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity. Although the burden of showing immunity remains on the Defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a Defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the Defendant and the burden of proving entitlement to immunity rests with the Defendant asserting it. Once asserted,

However, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be

shown to be a valid defense, the Defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendants are

entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

### D. PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III. CONCLUSION

The Plaintiff has failed to show that Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants Horry County, Tom Fox, and Deborah Hipp (document #48) for summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 31, 2012
Florence, South Carolina

The parties' attention is directed to the important notice on the next page.